UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>RODNEY TANNER, )<br>   a/k/a "T-Mac," )<br>KEITH CALVERT, and )<br>FRED CALVERT )  | No. 07 CR 707<br><br>Judge Ronald A. Guzman |

GOVERNMENT'S MOTION IN LIMINE CONCERNING
ADMISSION OF RECORDED CONVERSATIONS

The United States of America, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully moves the Court, *in limine*, as follows:

I.  **Admissibility of Tape-Recorded Evidence**

The government seeks an *in limine* ruling relating to recorded evidence which it will seek to introduce at trial.

    A.  **The Consensually Recorded Conversations Between the CI and Defendant Tanner Are Admissible Through the Testimony of Special Agent Mark Shaffer.**

The defendants have been charged with (i) conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846; (ii) possessing and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and, with respect to defendants Keith Calvert and Fred Calvert, (iii) being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g). These charges result from a joint investigation of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the North Chicago Police Department of firearms and drug trafficking offenses.

At trial, the government will seek to admit various consensually recorded conversations, of both telephone calls and an in-person meeting between the CI and defendant Tanner. These conversations were recorded by electronic and mechanical equipment controlled by the ATF through the course of the investigation. The recordings are admissible without the testimony of the CI.

In particular, the government intends to use at trial tape recorded telephonic conversations between the CI and Tanner made on August 1, 2007, August 10, 2007 and September 4, 2007. At this point, the government intends to establish a foundation for these exhibits and offer them into evidence through the testimony of ATF Special Agent Mark Shaffer.

It is expected that, with respect to the consensually recorded telephone conversations, Agent Shaffer will testify that he maintained possession of the recording device that was used to record the CI's conversations with defendant Tanner. Further, Agent Shaffer will testify that he turned on the recording device during the conversations, and that he operated, possessed and maintained control of the recording device before, during and after the call was complete. He will also be able to testify that the CI was in his immediate presence during the duration of the telephone conversations. Agent Shaffer will also testify that after the telephone conversations between the CI and the defendant were complete, he listened to the recordings captured by the recorder. Agent Shaffer will also identify the voices of the participants in the phone calls to be the CI and defendant Tanner based upon his having previously heard those voice. Agent Shaffer will testify that copies of the conversations to be admitted into evidence are true and accurate copies of those portions of the recordings as they appear on the full-length original recording.

It is expected that, with respect to the consensually recorded in-person meeting between the CI and Tanner, Agent Shaffer will testify that he placed a digital recording device on the CI after testing the device to make sure it was properly functioning. Further, Agent Shaffer activated the recorder and then later obtained the device from the CI later the same day, at which time Agent Shaffer turned off the digital recorder. On each such occasion, the recorder did not appear to have been subjected to tampering, which would have been obvious had tampering of the device been attempted. Agent Shaffer will also testify that, based upon the obtained recording, the CI did not turn off the recorder while it was on his person and he could not have altered the recordings that were made by the device while it was on his person. In addition, the recording device captured the date and time of the recordings and that the dates and times of the retrieved recordings matched the

times during which the digital recorder was on the CI's person. Further, Agent Shaffer will testify that, following the different meetings between the CI and the defendants, he listened to the recordings captured by the digital recording device and that, as stated above, he recognizes the voices on the recordings as those of the CI and Tanner. In addition, Agent Shaffer will state that he arranged to have copies of the recordings made, that he has listened to the copies of the recordings, and that the copies are true and accurate copies of those portions of the recordings as they appear on the full length original recording.

The Federal Rules of Evidence provide that "[t]he requirement of authentication. . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). To establish the authenticity of a recorded conversation, the proponent must show, by clear and convincing evidence, that the recording is a "true, accurate and authentic recording of the conversation, at a given time, between the parties involved." *United States v. Carrasco*, 887 F.2d 794, 802 (7th Cir. 1989).

Therefore, the government must demonstrate that the conversations (both telephonic and in-person) contained on the exhibits the government intends to introduce at trial are accurate renditions of the conversations between the CI and the defendant in order to establish the required foundation for the admission of the recordings. Although this foundation may come from a participant to the conversation, such a witness is not required. Numerous federal cases recognize that the foundation for recordings may be provided circumstantially through evidence that the events discussed on the tapes in fact occurred and that the purported speakers on the recordings in fact participated in those events. *See, e.g., United States v. Restrepo*, 814 F.2d 1236, 1241 (7th Cir. 1987); *United States v. O'Connell*, 841 F.2d 1408, 1421 (8th Cir. 1988) ("In view of the identity between the scenario arranged on the telephone and that subsequently enacted, . . . 'the substance of the communication itself may itself be enough to make prima facie proof.'" (quoting *United States v. Bonanno*, 487 F.2d 654, 659 (2d Cir. 1973)); *United States v. Bright*, 630 F.2d 804, 820 (5th Cir.1980) (taped conversation admitted based on testimony of agent who did not hear the conversations at issue but

observed, from afar, the recording agent initiate the conversation with the defendant); *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.1977) (holding testimony of an agent who did not observe the conversations in question was sufficient since he immediately took custody of the tapes after conversations ended).

The proffered testimony of Agent Shaffer outlined above is more than sufficient to establish the authenticity of the recordings. Agent Shaffer's testimony will establish that the recordings either were created using a device designed to record telephone conversations or a digital recorder. For the recordings of the telephone conversations, Agent Shaffer was present during each of the telephone conversations and he operated and maintained the recording equipment. With respect to the recording of the in-person meeting, as summarized above, he will testify that he equipped the CI with a digital recorder immediately before the meeting with Tanner, that he recovered the recorder immediately following the meetings and that the device had not been tampered with or shut off during the recording period. Moreover, the subject matter of the conversations is consistent between the recordings. Under such circumstances, and consistent with settled precedent, the tapes should be admitted based on Agent Shaffer's testimony, and regardless of whether the CI testifies. *E.g., United States v. Andreas*, 23 F.Supp.2d 835, 840-41 (N.D. Ill. 1998) (admitting tapes prepared by cooperating witness who refused to testify based on evidence that included corroborating references made by coconspirators in other taped conversations, expert testimony, and chain-of-custody testimony).

      **B.**    **The Admission of the Recorded Evidence In the Absence of Testimony By the CI Does Not Abridge the Defendants' Rights**

When consensual recordings are admitted on the basis outlined above, defendants have sometimes claimed a violation of the Confrontation Clause of the Sixth Amendment. However, these claims have been uniformly rejected by the federal courts.

The Seventh Circuit has held that, in cases where recorded evidence is admitted in the absence of testimony by the informant who recorded the conversations, the Confrontation Clause of the Sixth Amendment is not violated if the government specifies (and the jury is instructed) that the

statements of the informant are offered not for their truth, but rather are offered to provide context so as to make the defendant's statements intelligible as admissions.[1] The government will request such an instruction in this case, and it will submit one that is consistent with those previously approved by the Seventh Circuit.

For example, in *United States v. Davis*, 890 F.2d 1373, 1379 (7th Cir. 1989), the Seventh Circuit stated that "the admission of [the informant's] portion of the conversations do not implicate [the defendant's] sixth amendment rights because the tape recorded statements were admitted for the limited purpose of placing [the defendant's] statements in context." *Id.*; *see also United States v. Gajo*, 290 F.3d 922, 930 (7th Cir. 2002) (same). As long as the jury is instructed to consider the CI's statements not for their truth but as context in which to understand the defendant's admissions, there is no Sixth Amendment issue.

In addition, in *United States v. McClain*, 934 F.2d 822, 832 (7th Cir. 1991), the Seventh Circuit stated that "[j]ust as [the informant] was not a witness for sixth amendment purposes, he was likewise not a witness for Rule 607 impeachment" purposes. *Id*. at 832. The Seventh Circuit similarly rejected the argument that impeachment was permitted under Rule 806. *See id*. at 833 (non-testifying informant's statements not admitted for their truth, so they were not hearsay, and therefore no impeachment was permissible under Rule 806).

Consistent with the Seventh Circuit's decisions in *McClain* and *Davis*, the government respectfully requests an *in limine* ruling that admission of the consensual recordings in which the CI speaks does not confer any right to cross-examine or impeach the CI under the Sixth Amendment, Rule 607, or Rule 806. Such a ruling, of course, is predicated on the jury being instructed that any

---

[1] These cases are not impacted by the Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36 (2004). In that case, the Court ruled that the Confrontation Clause applies to "testimonial hearsay." Because the CI portion of the recordings are not being offered for their truth but rather as context for the defendant's admissions, there is no issue of "testimonial hearsay." *United States v. Van Sach*, 458 F.3d 694, 701-02 (7th Cir. 2006); *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) (*Crawford* does not apply to statements of non-testifying CI offered not for their truth but only to provide context for otherwise admissible statements of a defendant).

statements by the CI are not offered for their truth but rather are offered to provide context for the statements and admissions made by the defendants in this case.[2]

## II. Defendant Should Not Be Allowed to Call the CI Simply to Impeach the CI or As A Subterfuge To Present Otherwise Inadmissible Impeachment Evidence.

It is possible that the defendants may attempt to call the CI to testify. For the reasons explained below, the government requests the Court to adopt appropriate measures to prevent the defendants from abusing the evidentiary process through the CI.

It is hornbook law that "a party may not call a witness for the sole purpose of impeaching him." *United States v. Finley*, 708 F.Supp. 906, 909 (N.D.Ill. 1989) (Rovner, J.) (citing *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984); *United States v. Gorny*, 732 F.2d 597, 604 (7th Cir. 1984); *United States v. Morlang*, 531 F.2d 183, 189 (4th Cir. 1975)). As a corollary to that foundational principle, the Seventh Circuit has repeatedly warned against allowing a party to call a witness it knows will not give useful evidence, just so the party may then introduce otherwise inadmissible impeachment evidence. *See Webster*, 734 F.2d at 1192; *accord United States v. Medley*, 913 F.2d 1248, 1257 (7th Cir. 1990) (prohibiting calling a witness to impeach where it is a "subterfuge to get before the jury evidence otherwise not admissible"). It is also hornbook law that a witness such as a confidential informant may not be called by the defense for the purpose of sullying the prosecution by association. *See United States v. Silva*, 71 F.3d 667, 670 (7th Cir. 1995) ("[N]otwithstanding [defendant's] assertion . . . that 'a confidential informant with a sordid history

---

[2] Moreover, in the event the government does not call the CI during the trial, the defense is not entitled to a "missing witness" instruction. Such an instruction is only appropriate when the witness is "peculiarly within the government's power to produce." *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). First, even though the government has been in contact with the CI through law enforcement officers, the CI is not now "peculiarly within the government's power to produce." Second, in any event, should the defendants wish to serve the CI with a subpoena, the government will endeavor to make the CI available to the defendants for service of the subpoena. Thus, the testimony of the CI in this case will be available to the defense through the subpoena power of the Court. Under such circumstances, "the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992); *United States v. Cochran*, 955 F.2d 1116, 1122-23 (7th Cir. 1992).

. . . is always beneficial to the defense in front of a jury,' the unsavory nature of an informant is not admissible into evidence merely to make the prosecution appear dissolute by association.").

In this case, the defendants may call the CI in an attempt to introduce otherwise inadmissible impeachment. This issue is one of consequence to the structuring of the parties' cases and to the truth-seeking process at trial. Therefore, to prevent against abuse of the litigation process and to protect the government's right to a fair trial, the government requests that the defendant be required to make a pretrial showing of the relevance of any expected testimony from the CI.

Judge Rovner used a similar procedure in the *Finley* prosecution to address an analogous situation, where she required the defense to make a proffer of the relevance of any expected testimony that the informant might give, so the government could challenge the relevance of such testimony. *See Finley*, 708 F.Supp. at 910. In addition, in the event defense counsel proffers a viable basis by which to call the CI as a defense witness, the government requests that a preliminary *voir dire* of the CI outside the presence of the jury if it appears that the witness is not being called in the expectation that the CI will offer favorable testimony, but rather is being called as a subterfuge to interject otherwise inadmissible and inflammatory impeachment. *See, e.g., Medley*, 913 F.2d at 1257; *Webster*, 734 F.2d at 1192; *Morlang*, 531 F.2d at 189 ("[I]]t has never been the rule that party may call a witness where his testimony is known to be adverse for the purpose of impeaching him.").

Finally, in the event the Court determines that the defendant has established a proper, affirmative, evidentiary basis by which to call the CI as a defense witness, the government requests that the Court employ the same impeachment restriction used by Judge Rovner in *Finley*. Specifically, in *Finley*, Judge Rovner specified that if the defense called the informant (who was not called by the government and whose voice merely was heard on audiotapes) in the defense case, the defendant could not "impeach [the informant] except insofar as [the informant's] specific testimony might contradict prior statements" of the informant. *McClain*, 934 F.2d at 832.[3] In *Finley*, this

---

[3] On appeal, the *Morgan Finley* case was denominated *United States v. McClain*, 934 F.2d 822 (7th Cir. 1991).

simple prophylactic measure required the defense to scrutinize its actual purpose in calling the informant and, unsurprisingly, once defendant recognized that he was precluded from using the informant as a ruse to introduce otherwise inadmissible impeachment evidence, the defense elected not to call the informant. On appeal, when the defense claimed that the impeachment restriction was improper, the restriction was approved by the Seventh Circuit. *See id.* (affirming the district court's cross-examination rule); *accord Silva*, 71 F.3d at 671 ("[The informant's sordid] history would have been inadmissible for impeachment purposes" if he were called to give purported favorable testimony in relation to an entrapment claim). This rule fulfills the important prophylactic purpose of ensuring that the defense truly has an affirmative purpose for calling the witness — as opposed to using the witness as a pretext by which to introduce otherwise inadmissible impeachment.

The Seventh Circuit has repeatedly emphasized that district courts retain "wide latitude to impose reasonable limits on the scope and extent of cross-examination 'based on concerns about, among other things, . . . prejudice, confusion of the issues . . . or interrogation that is . . . only marginally relevant.'" *United States v. Sasson*, 62 F.3d 874, 882 (7th Cir. 1995) (quoting *Delaware v. VanArsdall*, 475 U.S. 673, 678 (1986)); *accord, e.g., United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir. 1987) ("A trial court has wide discretion to limit cross-examination"). Accordingly, in the event that defendants can properly call the CI to offer relevant and helpful testimony to the defense, the Court should restrict the defense to the same type of impeachment permitted in *Finley, i.e.*, impeachment by prior inconsistent statements as to the events at issue. This will prevent the defendant from using a witness simply as a vehicle by which to introduce otherwise inadmissible impeachment. Such a restriction is consistent with Seventh Circuit law – *see McClain*, 934 F.2d at 832 – and it would enhance the jury's ability to reliably determine the defendant's guilt or innocence.

### III.     Conclusion

WHEREFORE, the government respectfully requests that the foregoing motions in limine be granted for the reasons set forth herein.

                                          Respectfully submitted,

                                          PATRICK J. FITZGERALD
                                          United States Attorney

Dated: March 13, 2008                    /s/ Edward N. Siskel
                                          EDWARD N. SISKEL
                                          TYLER MURRAY
                                          Assistant United States Attorneys
                                          219 South Dearborn Street, 5th Floor
                                          Chicago, Illinois  60604
                                          Phone: (312) 353-7602

CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that, in accordance with Federal Rules of Criminal Procedure 49 and 5, and Local Rule 5.5, and the General Order on Electronic Case Filing ("ECF"), the following document:

GOVERNMENT'S MOTION IN LIMINE CONCERNING
ADMISSION OF RECORDED CONVERSATIONS

was, on March 13, 2008, served pursuant to the district court's ECF system upon the following attorneys listed below and hard copies were hand delivered to the attorneys at the addresses listed below.

To:     <u>Counsel for Rodney Tanner</u>
Ron Clark, Esq.
221 N. La Salle St., Suite 1938
Chicago, IL 60601

<u>Counsel for Keith Calvert</u>
Alison M. Siegler, Esq.
Federal Defender Program
55 E. Monroe St., Suite 2800
Chicago, IL 60604

<u>Counsel for Fred Calvert</u>
Jerry Bischoff, Esq.
35 East Wacker Dr., Suite 650
Chicago, IL 60601

/s/ Edward N. Siskel
EDWARD N. SISKEL
TYLER MURRAY
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois  60604
Phone: (312) 353-7602